IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARIA LOPEZ-CANIZARES,

        Plaintiff,

   v.

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 05-1034 (JBS)

**OPINION**

APPEARANCES:

Alan H. Polonsky, Esquire
Polonsky and Polonsky
512 White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Vernon Norwood
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of the plaintiff, Maria Lopez-Canizares, for Disability Insurance

Benefits under Title II of the Social Security Act.  42 U.S.C. §
401, et seq.  This Court must determine (i) whether the
Administrative Law Judge ("ALJ") properly determined Plaintiff's
residual functional capacity; and (ii) whether the ALJ was
required to utilize vocational expert testimony under the holding
in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000).

     For the reasons state below, this Court will remand the
matter to the ALJ for reconsideration based on the record
heretofore established.

I.   **BACKGROUND**

     A.   **Procedural History**

     Plaintiff filed an application for Disability Insurance
Benefits on January 7, 2003, in which she alleged an onset of
disability on March 25, 1989, due to chronic leg and back pain
resulting from trauma caused by an automobile accident.  (R. at
69-83.)  Her application was denied on April 22, 2003.  (R. at
42.)  Plaintiff filed a request for reconsideration on May 20,
2003, (R. at 47.), at which time she also claimed anxiety and
nervousness as a result of her condition.  (R. at 99.)  The
request for reconsideration was denied on July 28, 2003.  (R. at
49.)  Plaintiff filed a timely request for review by an
Administrative Law Judge ("ALJ"), (R. at 53.), and a hearing was
held in Voorhees, New Jersey on June 21, 2004, before
Administrative Law Judge Joseph M. Hillegas.  (R. at 192.)

2

ALJ Hillegas issued a decision denying benefits on October 21, 2004.  (R. at 11-20.)  Plaintiff filed a timely request for review by the Appeals Council, (R. at 9.), which was denied on January 25, 2005.  (R. at 5.)  As a result, the October 21, 2004 decision of the ALJ became the final decision of the Commissioner of the Social Security Administration.  (R. at 5.)  Plaintiff filed the present action with the Court on March 8, 2005, seeking judicial review of the ALJ's decision.

    B.    **Evidence in the Record**

        1.    **Personal and Work History**

Plaintiff was born on July 28, 1970 in Cuba.  (R. at 69.) She completed school through the 11th grade and can read and write only in Spanish.  (R. at 29.)  Plaintiff is not a United States citizen, but she was admitted to the U.S. on September 4, 2002, as a refugee under Section 207 of the Immigration and Nationality Act.  (R. at 69.)  Plaintiff has not lived outside of the U.S. since that date.  (R. at 69.)  Plaintiff currently receives Aid to Families with Dependent Children (in the amount of $424 per month) and food stamps.  (R. at 70.)  She does not receive any other type of income.  (R. at 70.)  Plaintiff is married to Ricardo Margolles Aguila, a self-employed day laborer who receives approximately $1,120 per month in wages.  (R. at 71.)  The couple has one son.  (R. at 28.)

Plaintiff alleges that she had an onset of disability due to trauma suffered in an automobile accident on March 25, 1989. (R. at 75.) Plaintiff has not worked since that date, and subsequently has never been employed in the U.S. (R. at 75.) Prior to the onset of her alleged disability, which occurred at age 18, Plaintiff was employed as a teacher's aide at a pre-school in Cuba. (R. at 87.) The position required Plaintiff to assist a teacher with children's activities, as well as to supervise, feed, and change the diapers and clothing of small children. (R. at 76.) Plaintiff worked approximately 8 hours per day during which she was constantly moving. (R. at 88.) She frequently lifted and carried children weighing approximately 25 pounds. (R. at 88.)

Plaintiff claims that as a result of injuries suffered in the automobile accident, she experiences constant pain in her legs and back. (R. at 91-92.) The pain has worsened throughout the years and causes difficulty with standing, sitting and lifting objects. Plaintiff must constantly change positions to ease the pain. (R. at 91.) Plaintiff testified that she can walk for only half of a block before needing to rest and must proceed very slowly. (R. at 34.) She can stand for only two to three minutes, shifting from one leg to the other. (R. at 34.) Additionally, Plaintiff has difficulty going up and down stairs. She sometimes loses her balance and has fallen several times.

4

(R. at 98.)  Pain in her back prevents her from using her hands for long periods of time.  (R. at 97.)  Plaintiff takes pain medication daily, which at times alleviates the pain for a short period.  (R. at 93.)  However, the medication makes her feel dizzy and nauseous.  (R. at 93.)

Plaintiff is able to do light house work, such as cooking and cleaning dishes, and can read, watch television, or knit for short periods of time.  (R. at 95.)  Her husband does all of the shopping and most of the household maintenance.  (R. at 95-96.)  Plaintiff claims that her condition causes her anxiety and nervousness.  (R. at 99.)  She stated that she has been tolerating the pain for years, but claims that it keeps her from doing things that she enjoys, including working for an income. (R. at 102.)

### 2.  **Medical History**

On November 18, 2002, Dr. Juan Bejaran of the Southern Jersey Family Medical Center evaluated Plaintiff and completed a Refugee Health History and Appraisal.  (R. at 113-17.)  At the time, Plaintiff complained of pain, so Dr. Bejaran ordered X-rays of her thoracic and lumbosacral spine, right hip, right femur and left wrist.  (R. at 115.)  The X-rays showed both the thoracic and lubosacral spine to be of normal stature and alignment, and Plaintiff's right hip and left wrist had no significant abnormality.  (R. at 115-16.)  The report revealed a metallic

5

side plate and multiple transfixing screws that Plaintiff received after her automobile accident.  (R. at 116.)  Dr. Bejaran noted a deformity of the femur that was compatible with an old healed fracture.  (R. at 116.)

On January 15, 2003, Plaintiff was evaluated by Dr. Steven H. Kahn of the Regional Orthopedic Professional Association on referral from Plaintiff's family doctor, Dr. Michael P. Weingarten.  (R. at 125-27.)  During that exam, Plaintiff complained of low back pain, joint pain, stiffness and difficulty walking.  (R. at 125-26.)  A physical examination of Plaintiff's thoracic and lumbar spine revealed some tenderness over the paravertebral region, more pronounced on the right side.  (R. at 126.)  Her range of motion was 80% of normal in flexion, extension and side bending.  (R. at 126.)  With extreme motions, Plaintiff had localized lumbar pain, but no radicular symptoms in the lower extremities.  (R. at 126.)  Straight leg raises on the left side were negative, but were positive on the right side for lumbar pain.  (R. at 126.)  The range of motion of her right hip was within satisfactory parameters, and she had full range of motion in her right knee.  (R. at 126.)  Plaintiff showed minimal tenderness around the right ankle and elicited full ankle dorsiflexion and plantar flexion.  (R. at 126.)  An examination of the left leg revealed no signs of infection or compartment

syndrome.  Plaintiff elicited full left ankle doriflexion and
plantar flexion.  (R. at 126.)

Dr. Kahn recommended a magnetic resonance imaging [MRI] scan
of Plaintiff's lumbar spine to rule out a herniated disc as the
cause of her low back pain, and recommended a scannogram of her
lower extremities to determine whether a leg length discrepancy
was the cause of her pain.  (R. at 127.)  Dr. Kahn also
recommended that Plaintiff continue taking Naprosyn, an anti-
inflammatory, and that she return in approximately three weeks
for reevaluation.  (R. at 127.)

An MRI of Plaintiff's lumbar spine was completed by Dr. Ajay
Munjal on January 27, 2003.  The MRI showed normal alignment.
(R. at 124.)  There was minimal osteoarthritic change evidenced
by spur formation and very mild degenerative disc disease.  (R.
at 124.)  The image showed no evidence of disc herniation, spinal
stenosis or neural foraminal narrowing.  (R. at 124.)

Plaintiff returned to the Regional Orthopedic Professional
Association for a follow-up evaluation by Dr. Stuart G. Dubowitch
on February 5, 2003.  (R. at 122-23.)  Dr. Dubowitch noted that
the MRI of the lumbar spine showed no disc herniation.  (R. at
122.)  Additionally, an MRI of Plaintiff's left tibia and fibula
showed a healed left midshaft fracture with slight angulation and
a well healed femoral right shaft fracture with a plate.  (R. at
122.)  Dr. Dubowitch noted that Plaintiff walked with an antalgic

gait and had a slight limp.  (R. at 122.)  Plaintiff experienced
pain in the right leg, but had no significant pain about the
lumbar spine.  (R. at 122.)  Straight leg raises produced some
discomfort in the back.  (R. at 122.)  Plaintiff had some pain in
the right thigh, but no swelling.  (R. at 123.)  Dr. Dobowitch
estimated a leg length discrepancy of approximately one half inch
to the lower left leg and recommended a shoe lift.  (R. at 123.)

On May 20, 2003, Dr. Michael P. Weingarten, Plaintiff's
family doctor, completed an examination report for the State of
New Jersey Division of Family Development.  (R. at 145-48.)  Dr.
Weingarten noted the injuries that Plaintiff suffered in the
automobile accident and characterized her situation as stable.
(R. at 145.)  Dr. Weingarten concluded that Plaintiff could
perform only sedentary work and characterized her Functional
Classification of Musculoskeletal Inadequacy as a Class II,
meaning that Plaintiff had a functional capacity adequate to
conduct normal activities despite limited mobility.  (R. at 146.)

On June 11, 2003, Plaintiff returned for another evaluation
by Dr. Kahn.  (R. at 119-20.)  Plaintiff had misplaced her
prescription for the shoe lift and therefore hadn't been using
one.  (R. at 119.)  Plaintiff showed tenderness to palpation
along the vertebral column.  (R. at 119.)  Her range of motion
was approximately 85% of normal in flexion, extension and side
bending with extreme motions causing localized lumbar pain but no

radicular symptoms in the lower extremities.  (R. at 119.)
Straight leg raises were negative, but caused some anterior thigh
pain on the right side.  (R. at 119.)  Dr. Kahn confirmed that
there appeared to be a leg length discrepancy and recommended a
scanogram in order to obtain an accurate measurement of the
discrepancy for a shoe lift.  (R. at 120.)  Additionally, Dr.
Kahn recommended that Plaintiff take Motrin, an anti-
inflammatory, three times per day and begin physical therapy for
her lumbar spine.  (R. at 120.)  Dr. Kahn recommended that
Plaintiff return for an evaluation in one month.  (R. at 120.)

    Also in June of 2003, Plaintiff underwent a psychiatric
examination by Dr. Alan Dubro at the request of the Social
Security Administration as part of her disability claim.  (R. at
128-31.)  Plaintiff did not report any significant depressive,
manic or anxiety related symptoms.  (R. at 129.)  Sleep patterns,
appetite and sexual functioning were normal.  (R. at 128-29.)
Plaintiff's demeanor and responsiveness was cooperative and her
social skills and overall presentation were adequate.  (R. at
129.)  Plaintiff stated that on a daily basis, she was able to
bathe, dress and groom herself.  (R. at 130.)  Such tasks were
performed slowly, however, due to Plaintiff's orthopedic
limitations.  She was also able to prepare simple meals and do
light cleaning and laundry, and could food shop with the
assistance of her husband.  (R. at 130.)  Dr. Dubro found that

Plaintiff would have difficulty in regularly maintaining a schedule that involved standing, bending or lifting.  (R. at 131.)  However, he felt that Plaintiff demonstrated no psychiatric problems that would significantly interfere with her ability to function on a daily basis.  (R. at 131.)

On August 18, 2003, Plaintiff visited the emergency room of the Cooper Heath System for pain in her right leg after experiencing a fall.  (R. at 136-141.)  The emergency physician noted Plaintiff's prior injuries due to the automobile accident and stated that they had healed well.  (R. at 137.)  Plaintiff experienced no new trauma and had no swelling.  (R. at 136-37.)  Plaintiff was prescribed Percocet, a pain killer, and discharged. (R. at 141.)

In October 2003, Plaintiff began seeing a psychotherapist at Nueva Vida Behavioral Health and was diagnosed with anxiety disorder.  (R. at 142.)  The therapist noted that Plaintiff worried about her physical health--both about her injuries related to the accident, as well as masses that had been found in her breast--and experienced some depression.  (R. at 167.)  Plaintiff's prognosis was fair to good and she posed no suicidal risk.  (R. at 166-67.)  The therapist assessed Plaintiff's GAF at 40.[1]  (R. at 166.)

---

[1] The Global Assessment of Functioning, or GAF scale, is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological

Dr. Weingarten completed a second examination report for the State of New Jersey Division of Family Development on December 9, 2003, some six months after his first examination.  (R. at 149-52.)  Dr. Weingarten evaluated Plaintiff and concluded that she was as unable to do <u>any</u> work and characterized her Functional Classification of Musculoskeletal Inadequacy as Class III, meaning that Plaintiff had the functional capacity adequate to perform little or none of the duties of usual occupation or self care.  (R. at 150.)

On August 10, 2004, Plaintiff was given a complete orthopedic examination by Dr. Tim Pinsky at the request of ALJ Hillegas.  (R. at 66, 180-88.)  Plaintiff complained of pain in her right hip, left leg, shoulder and back, as well as swelling in her left arm and leg.  (R. at 181.)  After reviewing Plaintiff's medical records and conducting a physical examination, Dr. Pinsky found that Plaintiff experienced some exertional limitations due to her impairment, but concluded that she was capable of many work related activities.  (R. at 185-88.)  Those activities included frequently lifting a maximum weight of 20 pounds; standing or walking at least 2 hours in an 8 hour work

_____

functioning of adults. The scale is presented and described in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR).  A GAF between 31-40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

day, while using an assistive device for ambulation; sitting;
pushing or pulling with her lower extremities; and occasionally
balancing, kneeling, crouching, crawling and stooping.  (R. at
186.)  Dr. Pinsky concluded that Plaintiff had no manipulative or
visual/communicative limitations.  (R. at 186-87.)  Although
Plaintiff alleged that she used a cane at all times, Dr. Pinksy
noted that the cane lacked a rubber tip.  (R. at 183.)
Additionally, he felt that Plaintiff's limitations could be less
severe if she obtained the prescribed shoe lift.  (R. at 186.)

## II.   DISCUSSION

In his October 21, 2004 decision, ALJ Hillegas found that
there was substantial evidence that Plaintiff was not disabled.
Plaintiff has appealed this decision.

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for Disability Insurance Benefits.  Ventura v.
Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams
v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial
evidence means more than "a mere scintilla."  Richardson v.

<u>Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co.</u>
<u>V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>,
845 F.2d 1211, 1213 (3d Cir. 1988).

    A reviewing court has a duty to review the evidence in its
totality.  <u>See</u> <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).
"[A] court must 'take into account whatever in the record fairly
detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp.
277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health</u>
<u>& Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting
<u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951).

    The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence." <u>Ogden</u>
<u>v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster</u>
<u>v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has
held that an "ALJ must review <u>all</u> pertinent medical evidence and
explain his conciliations and rejections." <u>Burnett v.</u>
<u>Commissioner</u>, 220 F.3d 112, 122 (3d Cir. 2000) (emphasis added).
Similarly, an ALJ must consider and weigh all of the non-medical
evidence before him.  <u>Id</u>. (citing <u>Van Horn v. Schweiker</u>, 717 F.2d

871, 873 (3d Cir. 1983); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder," <u>Williams</u>, 970 F.2d at 1182, and an ALJ need not explicitly discuss every piece of relevant evidence in his decision.  <u>See</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001).

Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>See</u> <u>Sykes</u>, 228 F.3d at 262.  <u>See also</u> <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful

14

activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. §1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  See id. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas, 823 F.2d at 777.  See Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, ALJ Hillegas concluded that Plaintiff was not under a disability as defined under Title II of the Social Security Act at any time through the date of his decision.  (R. at 13.)  At Step One, the ALJ found that Plaintiff had not engaged in

16

substantial gainful work since the date of the alleged onset of her disability on May 25, 1989.  (R. at 14.)  At Step Two, he found that Plaintiff suffers from "severe" impairments within the meaning of the Act due to a post status fracture of her right femur, lumbar strain and sprain, chronic leg and back pain, and depression, which limits Plaintiff's ability to perform some work-related activities.  (R. at 14.)  At Step Three, the ALJ found that the impairments did not meet or equal the criteria of an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ concluded that the record did not contain the documentation necessary to establish disability, giving particular consideration to Medical Listings 1.02, 1.03, 1.06. (R. at 14.)  At Step Four, the ALJ concluded that Plaintiff had no past relevant work experience.[2]  (R. at 18.)  The ALJ proceeded to Step Five of the sequential analysis and found that Plaintiff's impairments did not prevent her from performing a full range of sedentary work activity.  Therefore, the ALJ found Plaintiff "not disabled" and denied her request for Disability Insurance Benefits.  (R. at 19-20.)

**C.   Plaintiff's Arguments**

---

[2] Past work experience is considered relevant if it was done within the past 15 years, lasted long enough for an individual to learn to do the relevant job, and involved substantial gainful activity.  See 20 C.F.R. § 404.1565.

Plaintiff argues that the Commissioner's decision denying her benefits was in error because (i) the ALJ improperly determined Plaintiff's residual functional capacity ("RFC"), specifically because the determination that Plaintiff had no significant limitations on either a physical or psychological basis was not supported by substantial evidence; and (ii) the ALJ failed to appropriately utilize vocational expert testimony as required under Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000).

The Court recognizes that there could be substantial evidence in the record to support a finding of not disabled. However, there are two issues that trouble the Court and prevent it from affirming the ALJ's opinion.  First, the Court notes that two of the ALJ's conclusions regarding whether Plaintiff's condition results in a severe impairment are logically inconsistent.  Second, the Court notes that the ALJ has failed to address the fact that two evaluations completed within six months of each other by one of Plaintiff's treating physicians reach opposite conclusions regarding Plaintiff's residual functional capacity.  For the following reasons, we remand the matter to the ALJ with instructions to (i) resolve the logically inconsistent conclusion regarding Plaintiff's severe impairments; and (ii) address the two contrary evaluations by Plaintiff's treating physician.  Additionally, under the holding in Sykes, upon remand the ALJ will be required to utilize vocational expert testimony

18

in determining whether jobs exist in the national economy at Plaintiff's functional level given both her exertional and nonexertional impairments.

### 1. Limitations on Plaintiff's Functional Capacity Due to Her Psychological Impairment

Plaintiff first argues that the ALJ's decision that Plaintiff's psychological impairment does not significantly limit her functional capacity is not supported by substantial evidence. Plaintiff's argument that the decision is not properly supported relies on an inconsistency found in the ALJ opinion. Specifically, at Step Two of the sequential evaluation process, ALJ Hillegas determined that Plaintiff's depression, along with her status post fracture right femur, lumbar strain and sprain, and chronic leg and back pain constituted "severe impairments" within the meaning of 20 CFR 416.920(c). (R. at 14.) An impairment is considered "severe" if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In turn, "basic work activities" are defined as follows:

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include-
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;

    (3)  Understanding, carrying out, and remembering simple instructions;

    (4)  Use of judgment;

    (5)  Responding appropriately to supervision, co-workers and usual work situations; and

    (6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).  Thus, when ALJ Hillegas concluded that Plaintiff's depression constituted a severe impairment at Step Two of the sequential evaluation process--meaning that it significantly limited her ability to do work--he impliedly concluded that her depression limited her mental ability to do the activities listed in the definition of "basic work activities" at 20 C.F.R. § 404.1521.

At Step Five of the evaluation process, however, ALJ Hillegas concluded that "[t]he claimant has the residual functional capacity to do the following:...She is able to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting." (R. at 15.)  In reaching his conclusion about Plaintiff's RFC at Step Five, ALJ Hillegas essentially concludes that Plaintiff can perform the tasks set out in 20 C.F.R. § 404.1521, which he specifically concluded that she could <u>not</u> perform at Step Two.

Plaintiff cites this inconsistency as evidence for why the decision of "not disabled" cannot stand.  While the contradiction

does not necessarily mean that the ALJ's decision was not supported by substantial evidence, the presence of such an inconsistency in the ALJ's opinion is troubling.  Guided by the Third Circuit's decision in Adorno v. Shalala, 40 F.3d 43, 44 (3d Cir. 1994)(remanding because the findings of fact on which the ALJ based his decision were logically inconsistent and contradictory), we remand to resolve the inconsistency.[3]

    If the record contains substantial evidence to support the ALJ's assessment of Plaintiff's residual functional capacity, an appropriate remedy for the inconsistency may be to find that Plaintiff's depression does not constitute a severe impairment. A claimant must demonstrate a severe impairment in order to proceed beyond Step Two of the sequential evaluation process and avoid a finding of "not disabled" at that step.  See 20 C.F.R. § 404.1520(c).  Because Plaintiff's status post fracture right femur, lumbar strain and sprain, and chronic leg and back pain were correctly found to be severe impairments, the sequential analysis would proceed beyond Step Two regardless of whether Plaintiff's depression is also considered a severe impairment.

---

    [3] In Adorno, the ALJ concluded that the claimant could return to her former job, although not one that exposed her to dust and fumes.  Undisputed testimony showed that claimant's former job exposed her to fumes and heavy dust.  The Third Circuit vacated the district court's order affirming the Secretary's decision of "not disabled," stating that the contradiction must be reconciled.  40 F.3d at 46-47.

At Step Three, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria of any listed impairment and that determination has not been challenged.  The analysis then proceeded to a consideration of whether Plaintiff retained the residual functional capacity ("RFC") sufficient to perform either her past relevant work (Step Four); or some work, considering her age, education and past work experience, that exists in significant numbers in the national economy (Step Five).

When assessing a claimant's residual functional capacity, the ALJ considers all of the claimant's medically determinable impairments together, including impairments not considered "severe," and any related symptoms, such as pain.  See 20 C.F.R. § 404.1545(a).  Therefore, Plaintiff's RFC assessment would include consideration of her depression, regardless of whether it was found to be a severe impairment at Step Two.  The issue then becomes whether or not the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, which is discussed below.

### 2.   Determination of Plaintiff's Residual Functional Capacity

Plaintiff next argues that the ALJ's assessment of her residual functional capacity is not supported by substantial evidence.  As stated above, the sequential evaluation process for determining disability requires an assessment of the claimant's functional limitations and remaining capacity to perform work-

related activities, referred to as the claimant's residual functional capacity ("RFC"). <u>See</u> SSR 96-8P. A claimant's RFC represents his maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[4] <u>Id</u>. The RFC assessment considers the functional limitations that result from an individual's medically determinable impairment or combination of impairments, and provides a function-by-function assessment of the claimant's ability to do work-related activities. <u>Id</u>. In this case, ALJ Hillegas determined that Plaintiff has the RFC to do the following: lift and carry weights of 20 pounds frequently and 25 pounds occasionally; stand and walk for a total of 2 hours each; and sit for a total of 6 hours; occasionally balance, kneel, crouch, crawl and stoop; understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. (R. at 15.)

ALJ Hillegas' opinion began with a summary of the evidence in the record, including evaluations completed by Drs. Bejaran, Kahn, Dubowitch, Dubro, Weingarten, and Pinksy, and the assessment by the psychotherapist at the Nueva Vida Behavioral Health Center. (R. at 15-16.) Next, ALJ Hillegas discussed

---

[4] A "regular and continuing basis" means eight hours per day, for five days per week, or an equivalent work schedule. <u>See</u> SSR 96-8P.

Plaintiff's appearance at the hearing on June 21, 2004.  (R. at 16-17.)  Plaintiff discussed her automobile accident and noted that one of her legs is shorter than the other as a result, which causes difficulty with standing and swelling in her legs and ankles.  (R. at 17.)  Plaintiff stated that she uses a cane, although it was not prescribed by any doctor.  (R. at 17.) Plaintiff testified that she could walk approximately half of one block, stand for 2-3 minutes, and lift about 2 pounds.  (R. at 17.)  She stated that she needs to shift positions when sitting due to back pain.  (R. at 17.)

ALJ Hillegas concluded that Plaintiff's claimed restrictions were not fully persuasive when considered with the totality of the medical evidence in the record.  (R. at 17.)  Plaintiff claims this conclusion is not accompanied by adequate analysis and is not supported by substantial evidence.  Plaintiff is correct that it is not sufficient for the adjudicator to make a single, conclusory statement that a claimant's allegations are not credible.  <u>See</u> SSR 96-7p.  The determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record.  <u>Id</u>.

In this case, following his conclusory statement, ALJ Hillegas noted specific evidence that supported his conclusion. Of particular importance was (i) the evaluation by Dr. Pinsky, who determined that Plaintiff was able to lift/carry weights of

20 pounds frequently and 25 pounds occasionally; stand/walk for a total of at least 2 hours in a typical 8 hour work day, with the use of a hand-held assistive device for ambulation; sit without restriction; and occasionally balance, kneel crouch, crawl and stoop; and (ii) Plaintiff's own statements during her evaluation with Dr. Kahn, where she indicated that she is able to tend to her personal needs, prepare simple light meals, do light cleaning, laundry, food shopping, and manage money, and that she spends her days doing chores and caring for her son.  (R. at 17.) ALJ Hillegas then restated his conclusion that Plaintiff's subjective complaints, while generally credible, were not persuasive when considered in light of all the evidence in the record.  (R. at 18.)  That conclusion was supported by substantial evidence.

However, Plaintiff also claims that the ALJ's failure to mention Dr. Weingarten's second evaluation demonstrates that the assessment of Plaintiff's RFC is not supported by substantial evidence.  (Pl. Br. at 13.)  In Dr. Weingarten's second examination report, dated December 9, 2003, he concluded that Plaintiff's limitations rendered her unable to perform any work. (R. at 149.)  This finding is probative and supportive of Plaintiff's claim and directly conflicts with the other medical evidence accepted by the ALJ, including conclusions in Dr. Weingarten's report completed six months earlier.  Yet the ALJ

failed to mention the report anywhere in his opinion.  When medical testimony or conclusions are conflicting, the ALJ is not only entitled, but required to choose between them.  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981).  The ALJ needs to express not only the evidence he considered that supports the result, but also the evidence which was rejected.  <u>Id</u>. at 705.  Unless the ALJ has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits (such as Dr. Weingarten's second, contradictory report), to say that his decision is supported by substantial evidence approaches "an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  <u>Id</u>., citing <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).[5]

---

[5] There may be a number of reasons why ALJ Hillegas may have discounted Dr. Weingarten's December 2003 examination report. The report was completed on a form evaluation for the State of New Jersey Division of Family Development.  (R. at 149.)  Dr. Weingarten's conclusion that Plaintiff was unable to perform any work is indicated by checking a box next to "No Work" under the "Work Limitations" section.  (R. at 149.)  Indeed, there is little substantive discussion to support Dr. Weingarten's conclusion that Plaintiff could not work.  Other than the "Work Limitations" section, the remainder of the report is nearly identical to Dr. Weingarten's May 2003 report, where he concluded that Plaintiff was capable of performing sedentary work.  These points aside, the fact remains that ALJ Hillegas failed to acknowledge Dr. Weingarten's December 2003 report in his written decision, and this Court will not speculate as to the reason.

As a treating physician, Dr. Weingarten's findings are entitled to substantial weight. See Cotter, 642 F.2d at 704; Adorno, 40 F.3d at 47. An explanation from the ALJ of his reasons for rejecting this evidence is required so that we can determine whether such reasons were proper. See Cotter, 642 F.2d at 706-07. See also Brewster v. Heckler, 786 F.2d 581, 586 (3d Cir. 1986) (the Commissioner must make clear in the record his reasons for rejecting the opinion of treating physician). As such, this matter will be remanded so that the ALJ can consider and weigh this contradictory evidence and explain as much in his decision.

### 3.   Failure to Utilize Vocational Expert Testimony

Plaintiff next claims that the ALJ failed to elicit and consider testimony from a vocational expert as required by the holding in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). Because the ALJ found that Plaintiff had both exertional and nonexertional impairments, on remand, the ALJ should utilize testimony of a vocational expert in accordance with the holding in Sykes.

In Sykes, the court considered whether the Commissioner could reach a conclusion of "not disabled" at Step Five of the sequential evaluation process by relying on the medical-vocational guidelines (the "grids") promulgated under the Social Security Act, where the claimant has both exertional and

27

nonexertional impairments.  _See_ 228 F.3d at 260-61.  The medical-
vocational guidelines establish the types and number of jobs that
exist in the national economy for claimants with exertional
impairments.  _Id._ at 263.  Exertional impairments affect the
claimant's ability to meet the strength demands of the job for
sitting, standing, walking, lifting, carrying, pushing, and
pulling.  _See_ 20 C.F.R. § 404.1569a.  Nonexertional impairments,
on the other hand, involve limitations that do not affect a
claimant's physical strength but may nevertheless prevent him
from engaging in substantial gainful employment.  _See_ 20 C.F.R. §
404.1545(d).  The court in _Sykes_ held that the Commissioner
cannot determine that a claimant's nonexertional impairments do
not render him unable to perform work in the national economy
without either (i) taking additional vocational evidence
establishing as much or (ii) providing notice to the claimant of
his intention to take official notice of that fact.  _Sykes_, 228
F.3d at 261.

In this case, the ALJ determined at Step Two of the
sequential evaluation process that Plaintiff had severe
impairments that were both exertional (status post fracture of
the right femur, lumbar strain and sprain, and chronic leg and
back pain) and nonexertional (depression).  However, the ALJ
relied solely on the grids at Step Five in concluding that
Plaintiff was not disabled.  The ALJ noted that Plaintiff has the

RFC to perform a full range of sedentary work.  He concluded that she is a younger individual,[6] with limited education and no ability to communicate in the English language.  (R. at 20.) Based on those criteria and relying solely on the grids, the ALJ concluded that Plaintiff retains the functional capacity to perform work which exists in significant numbers in the national economy and found Plaintiff not disabled.  (R. at 19) (applying Medical-Vocational Rule 201.23, 20 C.F.R. Part 404, Subpt. P, App. 2).  Under Sykes, the ALJ cannot establish that there are jobs in the national economy that someone with Plaintiff's combination of exertional and nonexertional impairments can perform without relying on the testimony of a vocational expert in addition to the guidelines in the grids.  See 228 F.3d at 273. Therefore, the Court instructs the ALJ to consider vocational expert testimony in determining whether jobs exist in the national economy at Plaintiff's functional level given her exertional and nonexertional impairments.[7]

## III. CONCLUSION

---

[6] A "younger individual" is defined as someone under the age of 50.  See 20 C.F.R. § 416.963.  Although the ALJ incorrectly stated that Plaintiff's age at the time of his decision was 24, rather than 34, under the definition in the regulations she is considered a "younger individual."

[7] If, as noted above, the ALJ resolves the inconsistency in his conclusions about Plaintiff's severe impairments by finding that Plaintiff's depression does not constitute a severe impairment, Plaintiff will no longer have a nonexertional impairment requiring vocational expert testimony under Sykes.

For the reasons stated above, the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits is vacated, and the case is remanded for further consideration consistent with this Opinion.  On remand, the ALJ should (1) resolve the inconsistency in his conclusions about Plaintiff's severe impairments; (2) consider the contradictory evidence presented in Dr. Weingarten's two evaluations and explain his reasons for accepting or rejecting the evidence; and (3) utilize vocational expert testimony in determining whether jobs exist in the national economy at Plaintiff's functional level given both her exertional and nonexertional impairments.

The accompanying Order is entered.


February 27, 2006                  **s/ Jerome B. Simandle**
Date                                       Jerome B. Simandle
                                   United States District Judge


30